OPINION AND ORDER

Appellants, Sipaulovi Village Board of Directors, et al. (the “Village”) appeal from: (1) summary judgment for Respondent, Riley Sunrise Quoyavema (“Sunrise”) on Count I, the Village’s claim for unlawful interment, (2) summary judgment for Sunrise on Count II, the Village’s claim of trespass, and (3) the trial court’s award of attorney’s fees to Sunrise.
This Court finds that the trial court erred in granting summary judgment for Sunrise on Count I for unlawful disinterment. This Court also finds that the trial court erred in granting Sunrise summary judgment on Count II for Trespass. This Court also finds that the trial court erred in awarding attorney’s fees to Sunrise.

FACTUAL AND PROCEDURAL BACKGROUND

[1] An objective review of the trial court record establishes little finding of fact. Our review of the record reveals the following allegations. This case involves two claims filed by the Sipaulovi Village Board of Directors, et al. (the “Village”) against Riley Sunrise Quoyavema (“Sunrise”) involving a piece of purported clan land in the Village of Sipaulovi (the “Subject Land”). Count I seeks an injunction ordering the removal of human remains unlawfully interred [1] on the Subject Land. Count II is a claim for trespass on the Subject Land.
[2] In August 2000, the Village filed a complaint in the Hopi Tribal Court against Sunrise alleging that he is not a member of Sipaulovi Village. The complaint alleged'two counts: Count I for the unauthorized interment of human remains, and Count II for trespass, seeking injunctive relief on both claims. Count I, for the unauthorized interment of human remains sought as a remedy an injunction from the *412 court ordering Sunrise to “at his sole cost and expense, to disinter the remains of two non-Indian individuals from the Subject Land.”
[3] Sunrise filed a Motion to Dismiss for Lack of Jurisdiction, arguing that the Tribal Court’s jurisdiction was preempted by the Native American Graves Protection and Repatriation Act (“NAGPRA”) a federal statute granting jurisdiction to the federal courts for any violation thereof. The trial court denied Sunrise’s Motion to Dismiss and his subsequent Motion for Reconsideration. This Court granted jurisdiction pursuant to an extraordinary writ to review the denial of Sunrise’s Motion to Dismiss for Lack of Jurisdiction. This Court held that NAGPRA was inapplicable to intra-tribal regulation of burial practices and that tribal sovereignty dictated that Sunrise’s argument be rejected and the trial court’s ruling affirmed.
[4] Sunrise then moved for partial summary judgment on Count I for unlawful interment. Sunrise argued that the Village had failed to comply with Hopi Tribal Ordinance 26, which he argued requires a license to be obtained from the Federal and Tribal governments before any gravesite on the Hopi reservation may be disinterred. The Village responded they do not need a license under Ordinance 26 by arguing in the alternative that (1) they are not disinterring the remains but merely seeking an injunction to compel the defendant to remove the remains, (2) Sunrise has failed to show that the remains are “protected places and objects” under the meaning of Ordinance 26, and (3) even if they were “protected places” and a license was required, it would be Sunrise’s responsibility to procure one upon the grant of an injunction compelling him to disinter the remains.
[5] The trial court granted partial summary judgment in favor of Sunrise. During the April 21, 2003 hearing on the Count I summary judgment motion the trial judge stated, “the court, after hearing argument and having reviewed the file, finds that Ordinance 26 will and shall apply and does apply to the Village of Sipau-lovi and because the Court finds that the Village has not complied with the licensing requirement of Ordinance 26, the Defendant’s Motion for Partial Summary Judgment is granted on that point. In regards to the trespass, the court is not and will not be able to make a ruling on that, I believe further argument is necessary on that particular matter.” On May 1, 2003, the trial court issued an order that “dismissed Count I of Plaintiffs Verified Complaint, which seeks the disinternment [sic] of the remains of Lois M. Quoyavema and Helmuth Quoyavema.” On July 17, 2003 the trial court issued a second order which reads, “Count I of Plaintiffs Verified Complaint, which seeks the disinterment of the remains of Lois M. Quoyavema and Hel-mut Quoyavema has been dismissed. Count II in the Plaintiffs verified Complaint, which seeks an order to remove Defendant and all of his personal property from land which Defendant is unlawfully occupying, has not been dismissed. Count II will need to move forward to a trial.”
[6] Sunrise then moved for summary judgment on Count II, the trespass claim. Sunrise based his summary judgment motion on the following evidence: (1) a land assignment document (“Land Assignment Document”) showing the conveyance of the Subject Land from his father to himself, executed by Charlie Honhongeva (who Sunrise claims was the Kikmongwi with the power to assign land) and witnessed by three others, ineluding a notary, (2) his own affidavit testifying that his family has used the land for more than one hundred years, and (3) a map of the “Second Mesa Day School” which shows a signature that *413 Sunrise claims is that of “Charlie Honhon-geva” above the words “Chief—Sipaulovi Village” as proof that he was the Kikmong-wi with the power to assign property rights. Sunrise also argued in the alternative that the trespass claim was barred by the doctrine of laches and submitted two letters from the Village (sent in 1965 contesting Sunrises right to the Subject Land) as evidence that over 35 years has passed before the Village commenced litigation.
[7] The Village responded by producing evidence disputing Sunrise’s property rights to the Subject Land. These were in the form the affidavits of Ferrell Secakuku and Lorena Charles in which they state: (1) that the Subject Land is within the traditional clan holdings of the Village of Sipaulovi, (2) that the Kikmongwi at the time Sunrise’s Assignment Document was Charlie Humehongva, and that Charlie Honhongeva wras his son, with no power to assign land, (3) that the Subject Land had been vacant, never been assigned and never been consistently used, though other clan members occasionally farmed on it, and (4) that Sunrise had never used the land as a permanent residence and only used it for a short time each year. In addition, the Village argued that the doctrine of Laches did not apply to these facts as there was no recourse for the Village to seek enforcement of their 1965 determination that Sunrise had no right to the Subject Land since the Hopi Tribal Court was not enacted until 1972.
[8] The trial court held a Count II ..■.■summary judgment hearing on October 15, 2003. The trial court judge did not give a ruling during the hearing. Instead, at the close of oral arguments, the judge told the parties that he would deliberate and then call them on the telephone with his decision. Unfortunately, the phone call, if it happened, was never entered into the record. There is no information on the record of the trial courts reasoning in coming to its decision.
[9] On February 3, 2004, the trial court granted Sunrise’s Motion for Summary Judgment stating in its order, “[t]he court finds that no triable issue on the Sipaulovi Village’s claim of trespass exits [sic]. The court also finds that no genuine issue of material fact exists as to Defendant’s ownership of the property in question. Therefore, the defendant is entitled to a summary judgment as a matter of law.” The February 3, 2004 order also awarded Sunrise his attorney’s fees and costs.
[10] On February 23, 2004, the Village filed a Notice of Appeal appealing both the February 3, 2004 order granting summary judgment for Sunrise on Count II, for trespass, and the “April 30, 2003”[2] (May 1, 2003) order granting summary judgment on Count I, for unlawful interment. The Notice of Appeal also argued that the trial court erred in awarding attorneys fees to Sunrise under HIRCCP 26(e).
[11] Appellate oral arguments were heard in this case on November 18, 2004.

ISSUES OX APPEAL

COUNT I—Unlawful Intennenl

1. Did the trial court err in granting summary judgment to Sunrise on Count I, which seeks an injunction ordering Sunrise to disinter two sets of human remains?

*414
COUNT If—Trespass

2. Does the Tribal Court have subject matter jurisdiction to hear this claim?
3. Did the trial court err in granting summary judgment to Sunrise on Count II for trespass?

Attorney’s Fees

4. Whether the trial court erred in granting Sunrise attorney’s fees under HIRCCP 25(e).

DISCUSSION

I. COUNT l: Unlawful Interment
A. The Trial Court Erred in Granting Sunrise Summary Judgment on Count I. for Unlawful Interment
[12] The trial court held that the Village’s failure to obtain a license to disinter human remains pursuant to Hopi Ordinance 26 prior to filing it’s complaint precluded it from litigating the matter in Tribal Court. Accordingly, the trial court granted Sunrise’s motion for summary judgment. The Village asserts on appeal that the trial court erred as a matter of law as Ordinance 26 does not require the Village to obtain a license prior to filing it’s complaint. For the reasons set forth below we agree with the Village.
1. Standard of Reriew
[13] We review a grant of summary judgment de novo, drawing “all reasonable inferences supported by the evidence in favor of the non-moving party.” Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir.2002). Our rules provide that summary judgment may be granted where there are no genuine issues of material fact the moving party is entitled to judgment as a matter of law7. HIRCCP 27. The only issue is whether the terms of Ordinance 26 precludes the Village from pursuing injunctive relief in this matter.
2. The Plain Language of Hopi Ordinance 26 Does Not Bar Litigation
[14] Hopi Ordinance No. 26 “provided for the protection of places and objects of sacred, historical and scientific interest on the Hopi Reservation.” It requires liberal construction of the Ordinance to “maximize the authority of the Hopi Tribe to protect the sites, locations and objects of sacred, historical and scientific interest within the jurisdiction of the Hopi Indian Tribe,” including a severability provision in section 7. Of central importance to these facts are Section 2 (definitions) and Section 3 (prohibited acts). In Section 2(a) it specifically provides that “'protected places and objects’ shall include ... gravesites, both ancient and recent ...” Section 3(a) provides that “no person shall knowingly excavate upon or move, remove, destroy, injure, deface or desecrate any protected place or object within the Hopi Reservation.” In short, we read it to mean that it prohibits the disinterment of human remains on the Hopi Reservation,[3]
[15] In this case, the remains of Sunrise’s son and wife are buried on the Hopi Reservation. Thus the statute prohibits their disinterment absent Compliance with the statute.
[16] However, the Village asks the Tribal Court to order Sunrise to disinter the remains. If granted, the Ordinance by it’s terms would require Sunrise to obtain *415 a license prior to filing it’s suit. We hold that the plain language of Ordinance 26 by its terms does not bar litigation in this case. We therefore reverse and remand as to Count I.[4]
11. COUNT II: Trespass
A. Jurisdiction
[17] The Court has a duty to inquire as to whether it has subject matter jurisdiction to consider matters before it. This may be raised at anytime during the litigation and may be raised sua sponte by the court. Honie, v. Hopi Tribal Housing Authority, 1 Am. Tribal Law 477 (1998). In this case, whether a claim of trespass over lands wholly within the boundaries of a Ullage’s farming land raises the question of whether the Tribal Court has subject matter jurisdiction in light of Hopi Constitution, Article III, Section 2(d).
[18] In Ross v. Sulu, this Court held that the Tribal Court does not have jurisdiction to hear cases “where a disagreement between clans over which has the right to assign land is at the core of the case.” Ross v. Sulu, No. CIV-023-88 (July 5, 1991). However, where there is no “intravillage dispute between clans” such as a situation wThere the “the person of trespassing on another’s land has no claim of right flowing from a clan assignment”, there is no Ross v. Sulu limitation on the Tribal Court’s jurisdiction.
[191 In this case, there is no intra-village dispute between clans. Sunrise’s claims to the Subject Land do not flow from a elan assignment as he is not a clan member of Sipaulovi Village. Sunrise claims rights to the land from two sources: (1) the western-style Land Assignment Document and (2) through continuous use of the land. Neither of these flows from a clan land assignment. As such, this Court has jurisdiction to hear this ordinary trespass claim.
B. The Village Could Have Requested a Honie-Style Hearing To Certify and Enforce the Village’s 1965 Letters Informing- Sunrise that he has No Rights to the Subject Land and Ordering Him to Vacate, the Subject Land
[20] We do not find that a western-style trespass action adjudicates Hopi title to the land pursuant to Hopi customary law. An action for trespass merely vindicates one’s right to possession without affecting the underlying title. If the Village sought to adjudicate the underlying Hopi customary title, then proper jurisdiction to determine this would lie in the village forum unless that exclusive jurisdiction is waived. Such a process would have to comport with fundamental fairness concepts of Hopi justice. See Johnson v. Belgard, No. AP-003-94 (March 29, 1996). The village could then enforce its decision in Tribal Court pursuant to Home.[5]
*416 C. The Trial. Court Erred in Granting Summary Judgment to Sunrise Because There Were Genuine Issues of Material Fact as to Who Was in Actual Possession of the Subject Land
1. Standard of Review
[21] The Village asserts that the trial court erred as to its grant of summary judgment on Count II as there existed issues of material fact precluding summary judgment. Based upon our review of the record we agree.
[221 We find that the Village introduced conflicting evidence that could affect the outcome of the litigation. A material fact is one that, if disputed, would affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
[Substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
[23] The trial court can take into consideration “affidavits, discovery, or memoranda” in making a determination of whether or not there is “no genuine issue as to any material fact.” HIRCCP ¿7. However, the trial court may not resolve factual disputes or make credibility determinations when ruling on a motion for summary judgment. Liberty Lobby, Inc., 477 U.S. at 255, 106 S.Ct. 2505. The trial court must view the record in the light most favorable to the non-moving party, in this case, the Village. Id. (“evidence of nonmovant is to be believed and all reasonable inferences are to be drawn in his favor”). In this case, the trial judge should have looked at the evidence presented by both sides in the light most favorable to the Village.
1. The elements of a claim of trespass:
[24] There are two elements to the trespass cause of action. To be liable for trespass, a person must (1) enter the land in the [actual] possession of another, (2) remain on the land or fail to remove from the land a thing which he is under a duty to remove. See Restatement Second of Torts § 158.
2. A genuine issue of material fact exists as to who is in actual possession of the Subject Land.
[25] In the February 3, 2004 order, the trial court found “that no triable issue on the Sipaulovi Village’s claim of trespass exists. The court also finds that no genuine issue of material fact exists as to Defendant’s ownership of the property in question. Therefore, the defendant is entitled *417 to a summary judgment as a matter of law.”
[26] To prevail, Sunrise needed to show that the Village was not in actual possession of the Subject Land. Sunrise attempted to foreclose the issue by showing that he had current actual possession of the land by stating in his April 4, 2003 affidavit that “Since the time that I received ownership of the property from my father, and at all times subsequent thereto, I have openly possessed the property and have made beneficial use of it.”
[27] Under Celotex, the burden then shifted to the Village to show that they had some credible evidence for the element of actual possessory right to the Subject Land. The Village presented two pieces of evidence in the form the affidavits of Ferrell Secakuku and Lorena Charles. Ferrell Secakuku states, “The land was never used by Riley Sunrise for a permanent, year-round residence.” Lorena Charles states, “Riley Sunrise never used the land for a permanent residence. Mr. Sunrise resided in southern [sic] California, but would return to Hopi for a week each summer, usually during Snake dances and use the structure as a temporary residence.” If Sunrise does not have actual possession of the land, the Village would have constructive actual possession of the Subject Land sufficient to satisfy the first element of a trespass action.
[28] The evidence presented by the two parties presents clear genuine issues of material fact on the element of who has actual possession of the Subject Land.
[29] Since there were clearly genuine issues as to the material fact of who was in actual possession of the land, which is an element of the cause of action, the trial court erred in granting Sunrise summary judgment on Count II.
III. Attorney’s Fee,s
[30] Under HIRCCP 25(e), attorney’s fees will only be awarded in three circumstances: (1) if attorney’s fees were “specifically provided for by a contract or agreement of the parties”; (2) if “it reasonably appears that the case has been prosecuted for the purposes of harassment only”; or (3) “there was no reasonable expectation of success on the part of the affirmatively claiming party.” HIRCCP 25(e).
[31] None of the three circumstances that warrant an award of attorney’s fees under Rule 25(e) are present in this case. Sunrise argues that the disputed land conveyance is a contract upon which attorney’s fees could be granted. This argument is not tenable as the plain language of the rule states that the fees must be “specifically provided” for in the contract. There is no specific term in the Land Assignment Document that provides for an award of attorney’s fees. In addition, the validity of the conveyance is disputed by the Village and no finding of fact as to its validity was made by the trial court. It would be an abuse of discretion to base an award of attorney’s fees on a disputed document that does not specifically provide for such.
[32] Sunrise argues that the Village also filed their complaint “for the purpose of harassment” and “with no reasonable expectation of success.” As evidence, Sunrise cites the thirty five year delay in filing suit from 1965 when the Village sent letters informing him that he had no rights to the land, the “blatant disrespect for the sanctity of the gravesites” and the financial and emotional burden of litigation. None of this evidence rises to the level required by HIRCCP 25(e) which provides that the suit be brought “for the purposes of harassment only ” [emphasis added]. In addition, the evidence Sunrise presents does not show that the Village had no *418 reasonable expectation of success. Accordingly, the award of attorney’s fees was improper and should be vacated.

CONCLUSION

[33] We find that the May 1, 2003 order granting summary judgment to Sunrise on Count I was not a final order under HÍRCCP 25(b). Accordingly, Appellants’ February 23, 2004 Notice of Appeal was timely filed for Count I.
[34] We find that the trial court erred in granting summary judgment to Sunrise on Count I for unlawful interment. Hopi Ordinance 26 does not bar litigation seeking to disinter human remains. Should the Village prevail on Count I after trial, the Village or party responsible for the disinterment may need to comply with the requirements of Ordinance 26 pursuant to the trial court order granting the injunction.
[35] We find that the Tribal Court has jurisdiction to hear Count II, a western-style trespass claim, as the facts underlying the claim do not flow from an intra-village dispute between clans.
[36] We find that the trial court erred in granting summary judgment to Sunrise on Count II for trespass as there were genuine issues of material fact such that Sunrise was not entitled to judgment as a matter of law.
[37] We find that Sunrise is not entitled to attorney’s fees at this time.

ORDER OF THE COURT

[38] Summary judgment to Sunrise on Count I is reversed and remanded for further deliberations consistent with this opinion.
[39] Summary judgment to Sunrise on Count II is reversed and remanded for a determination of jurisdiction consistent with this opinion.
,- [40] The trial court’s award of attorney’s fees to Sunrise is vacated.
DIANE HUMETEWA, Justice.
1 write in dissent of this Court’s order and rationale as to Riley Sunrise’s Motion for Summary Judgment pursuant to Ordinance 26. Neither do I concur in the Trial Court finding in favor of Sunrise. The Court here, and the court below, have put the cart before the horse. Whether or hot Ordinance 26 applies does not arise until such time as the trespass claim is resolved. If Sunrise prevails, Ordinance 26 would likely never be implicated as Sunrise would likely never disturb his families burial cites. If the Village prevails, the court would then determine whether Ordinance 26 is applicable (and, ultimately, whether it is conscionable under that ordinance for a court to compel one, in Sunrise’s position, to disinter his own family). None of these issues are ripe for consideration until the trespass claim is resolved. Accordingly, I dissent as to count 1 and concur that material facts exist to resume the trespass action.

. The issue of whether the interment was “unlawful” was never reached at the trial level. The preparations underway to conduct a Smith hearing to determine tradition and custom law were mooted by the trial court’s grant of summary judgment for Sunrise on Count I for unlawful disinterment.

. In their 2/23/03 Notice of Appeal the Village mistakenly refers the 4/30/03 "Notice of Lodg-v ing of Order” filed by the Defendant as the ⅝ order granting summary judgment. The actual order granting summary judgment is the 5/1/03 "Order Granting Defendant's Motion for Partial Summary Judgment.” This Court will not penalize the Village for this error as it does not affect the analysis of the appeal.

. Ordinance 26 provides permission to disinter human remains pursuant to obtaining a license to do so by a person licensed to carry on historic or scientific research, excavation, or exploration. See Section 3(d), Hopi Ordinance 26.

. The issues as to whether Ordinance 26 regulates customary Village burial practices is not before us and we decline to comment on this issue. : •

. In Home, the Hopi Appellate Court held that the Tribal Court's authority in disputes involving village land assignments and land disputes was limited to a certification of Village decisions. The certification process is as follows:
(1) A petitioner (a village or individual) requests certification. This certification request can be actual or-constructive (the trial court can construe a party’s claim to include a request for certification).
(2) The trial court must hold an evidentiary certification hearing. The petitioner is responsible for publishing notice of the trial court hearing in "a publication of general circulation in the Hopi jurisdiction” and "posting in the village community center” (notice must include names of known interest *416 ed parties, location of property, and date and time of trial court certification hearing).
(3) The purpose of the certification hearing is to determine whether notice was provided to interested parties at the village level before the village made the decision being certified.
(4) The burden is on the petitioner requesting certification to establish by clear and convincing evidence that the village has “provided a fundamentally fair opportunity [to be heardl to all interested parties in the village decision-making process.’’
To properly certify a Village decision, there must be sufficient notice on two levels: (1) the petitioner before the Tribal Court must give notice that the current certification hearing is taking place so that interested parties can attend and (2) evidence must be produced to show that there is was sufficient notice given to interested parties during the underlying village decision making process.